E UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**MIGUEL A. REYES-BALLISTA,**<br><br>Defendant. | **Civil No. 18-634-2 (ADC)** |

**OPINION AND ORDER**

**I.      Background**

On October 12, 2020, Miguel A. Reyes-Ballista's ("defendant") filed a motion *In Limine* to exclude "testimony of forensic fingerprint expert and request for a Daubert hearing," at **ECF No. 135**. In doing so, defendant asserts "that the evidence sought to be introduced by the fingerprint expert is not sufficiently reliable to be admitted into evidence at trial". Specifically, defendant requests an order to "exclude the government's fingerprint testimony… or conduct a *Daubert* hearing to consider whether the government can sustain its burden of proof under *Daubert* and Rule 702." *Id* at 18. The Government responded asserting that defendant is not entitled to an evidentiary hearing, since aside from its motion being untimely, defendant has not cited to case law or other basis to have the testimony of the government's fingerprint expert excluded. **ECF No. 152**.

**II.     Untimeliness of the request**

As a threshold matter, the Court notes that defendant's request for exclusion of expert's testimony is untimely. Defendant points to the fact that additional discovery provided on October 11, 2020 (that is, eight days prior to the October 16th trial date), in trying to break free from the case management deadlines set by the Court. Specifically, defendant asserts that upon reviewing its evidence designation and preparing for trial, the government provided defendant with a series of photographic images "that demonstrate the exact part of the items where the fingerprints were extracted from." **ECF No. 135** at 4. For example, defendant makes reference to "events that occurred after the setting of the Court's deadline, the new discovery provided, plus the time needed to consult each new fingerprint related event with [our] forensic expert necessarily makes this motion timely[,]" (*Id* at 3) and added "time simply was needed to research, draft, interview the forensic expert and confer with Defendant, after all of these new enumerated events happened." *Id*.

However, the truth of the matter is that the Government submitted the fingerprint expert's report since January 26, 2019. The record reflects that at the conference held on July 1, 2019, defense counsel reported he was retaining the services of a fingerprint expert, but no motion was ever filed. **ECF No. 53**. At subsequent times, counsel reported he had retained a fingerprint expert to act in an advisory capacity but who was not to render a report. On June 12, 2020, the "defense [] announced that it did not expect to file any additional motions… based on the discovery and the conservations with the government." *Id* at 2. Actually, in July, 2020,

defendant provided notice and indicated he had declined the use of expert services. **ECF No. 107**. Moreover, defendant concedes that on September 11, 2020 while assisted by his fingerprint-"forensic expert", he had inspected the government's physical evidence, which as per the designation of evidence filed, included the reports and analysis of fingerprints found within four different parcels seized by the government. **ECF Nos. 100, 111**. After the deadline for filing dispositive and *In Limine* motions, on October 12, 2020, defendant moved for the exclusion of the testimony of the fingerprint expert and a *Daubert* hearing. In so requesting, defendant asserted that during a second evidence inspection, held on October 11th, the government had provided "new discovery." **ECF No. 135** at 5. As reflected on record, given the proximity of trial date, a telephone conference was held the next day. At the October 13, 2020 telephone conference, the government assured that latent fingerprint cards from 2012 and 2018 had been previously provided in discovery and had been subject to inspection by counsel and fingerprint expert for defendant. Nonetheless, the government did acknowledge having provided a series of photographs that had been taken by the government's expert while conducting the fingerprint analysis. Nonetheless, such evidence does not alter the expert's report nor evidence previously disclosed. The photos disclosed on October 11th were inspected by the court, in the presence of defense counsel at the conference held on October 15, 2020. **ECF No. 142**.

Having reviewed the record, inspected the supplemental evidence disclosed, and upon consideration of the parties' arguments, defendant has failed to show good cause and to provide a reasonable justification for filing a motion to exclude the government's fingerprint expert

testimony nine months after having possession of the report and a month after the defense's "forensic expert" inspected the evidence. More so, when the matter challenged is the methodology use by the expert.

The Court also notes that defendant's argument at **ECF No. 135** does not relate to any particular issue that may have flourished from the government's supplemental discovery, but rather relate to the general reliability of "latent print evidence" at a criminal trial. *Id* at 8. Defendant attacks the reliability of fingerprint evidence generally and relies on reports posing critiques as to its scientific reliability. **ECF No. 135-1** and **135-2**. Given the timely disclosure of the government's fingerprint expert report, the case management orders issued, which were multiple times amended as trial date was re-scheduled, defendant should have voiced his concerns with the methodology utilized by the government's expert, soon after the Government submitted its expert's report in January 2019. Accordingly, the motion is deemed untimely.

## III. Right to an evidentiary hearing

Even if the Court were to entertain defendant's untimely motion, the Court is not persuaded by defendant's arguments. The gist of defendant's motion is that fingerprint evidence is not as reliable as the courts across America believe. However, under Rule 702 and guidelines set in *Daubert*, this Court's responsibility as gatekeeper, is to find that the expert's conclusion has "a reliable basis in the knowledge and experience of [the expert's] discipline." D*aubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, at 592 (1993), see also *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) ("[*Daubert*] demands only that the proponent

of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion."). To that end, the First Circuit Court of Appeals has specifically noted that "*Daubert* does not require that the party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *Ruiz-Troche*, 161 F.3d at 85 (emphasis added); see also *United States v. Mooney*, 315 F.3d 54, 63 (1st Cir. 2002) ("We... note that Rule 702 specifically allows qualified experts to offer their opinions, a testimonial latitude generally unavailable to other witnesses.").

Defendant's best argument relies on his interpretation of two reports, "President's Council of Advisors on Sci. and Tech., Forensic Science in Criminal Courts: Ensuring Scientific Validity of Feature-Comparison Methods (Sept. 2016)" ("PCAST") and the "Strengthening Forensic Science in the United States: A Path Forward (2009)" ("NAS"). *See* **ECF Nos. 135-1, 135-2**. Based on these reports, defendant challenges the validity or accuracy of the so-called "ACE-V" method. Specifically, defendant posits the "NAS Report relies upon a comprehensive analysis of the ACE-V method and emphasizes the 'unambiguous' conclusion of the research- that ACE-V lacks scientific credibility." **ECF No. 135** at 11.

However, as the Government pointed out in its response, this argument has been dismissed many times before. Importantly, the First Circuit has reasoned:

> [n]umerous courts have found expert testimony on fingerprint identification based on the ACE-V method to be sufficiently reliable under *Daubert*. *See United States v. Baines*, 573 F.3d 979, 992 (10th Cir. 2009); *United States v. Mitchell*, 365 F.3d 215, 246 (3d Cir.2004); *United States v. Sullivan*, 246 F.Supp.2d 700, 704 (E.D. Ky. 2003); *United States v. Llera Plaza*, 188 F.Supp.2d 549, 575-76 (E.D. Pa. 2002);

> *Commonwealth v. Patterson*, 445 Mass. 626, 840 N.E.2d 12, 32-33 (2005) (finding ACE-V method reliable for single latent fingerprint impressions). Though acknowledging the lack of minimum points and relative subjectivity of certain ACE-V protocols, including that followed by the FBI, courts have nonetheless found that most of the *Daubert* factors support admitting latent fingerprint identification evidence obtained pursuant to the ACE-V method… As this court has stated, against such a backdrop, 'it is difficult to discern any abuse of discretion' when the district court decides to admit expert testimony that relies on the ACE-V method. *United States v. Mahone*, 453 F.3d 68, 71 (1st Cir.2006).

*U.S. v. Pena*, 586 F.3d 105, 110–11 (1st Cir. 2009).

Moreover, as to the question of whether a *Daubert* hearing is necessary in the first place, several other Circuits have explicitly determined that, "in the context of fingerprint evidence, a *Daubert* hearing is not always required." *U.S. v. John*, 597 F.3d 263, 274 (5th Cir. 2010)(citing *United States v. Mitchell*, 365 F.3d 215, 246 (3d Cir. 2004) (district court may dispense with a *Daubert* hearing entirely if no novel challenge is raised to the admissibility of latent fingerprint identification evidence); *United States v. Crisp*, 324 F.3d 261, 268 (4th Cir. 2003) ("[u]nder *Daubert*, a trial judge need not expend scarce judicial resources re-examining a familiar form of expertise every time opinion evidence is offered")). Contrary to defendant's general arguments, the consensus among sister Circuits seems to be that "absent novel challenges, fingerprint evidence is sufficiently reliable to satisfy Rule 702 and *Daubert*." *Id*. "'Fingerprint identification has been admissible as reliable evidence in criminal trials in this country since at least 1911." *United States v. Crisp*, 324 F.3rd 215 (3rdCir. 2004). In terms of specific *Daubert* factors, "the reliability of the technique has been tested in the adversarial system for over a century and has been routinely

subject to peer review. Moreover, as a number of courts have noted, the error rate of fingerprint identification is low." *Id* (internal citations omitted).

Ultimately, the inquiry under Rule 702 is a "flexible one." *Daubert*, 509 U.S. at 594. "The trial court enjoys broad latitude in executing its gate-keeping function; there is no particular procedure it is required to follow." *U.S. v. Vargas*, 471 F.3d at 261–62. Without such flexibility, the Court "would lack the discretionary authority needed both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999).

Following the universal consensus, the First Circuit has held that a district court does not abuse its discretion "in declining to hold a *Daubert* hearing" when no "novel challenge is raised" before admitting latent fingerprint identification testimony based on the ACE-V method. U*.S. v. Pena*, 586 F.3d n.4. In his motion at **ECF No. 135**, defendant has failed to make a minimum showing of the questionable nature of the evidence. *See Id*. It is incumbent upon defendant to provide expert testimony or data to demonstrate why government's expert testimony should not be admitted. *See Id* (holding that reference to "notes from Fordham Law Review" is insufficient to successfully invoke a *Daubert* hearing regarding fingerprint expert testimony). Here, defendant presents no case-related data or expert opinion whatsoever to even question the testimony of the government's fingerprint expert at the up-coming trial.

Even if the Court decided that defendant raised a "novel challenge," defendant's arguments still crumble. First, based on available data and the Seventh Circuit's reasoning, an argument could be made that eyewitness testimony is less reliable than fingerprint identification, yet here defendant does not challenge the admissibility of eyewitnesses. *See United States v. Herrera*, 704 F.3d 480, 487 (7th Cir. 2013).[1] Second, as indicated in the government's response at **ECF No. 152**, neither report cited by defendant concludes that expert fingerprint testimony should be inadmissible. Conversely, the PCAST report states that "latent fingerprint analysis is a foundationally valid subjective methodology," (**ECF No. 135-1** at 19) and that while errors may occur it provides an accuracy for positive test of 99.4%-99.7%. **ECF No. 152** at 4.

Here, the Government provided sufficient material to qualify its experts. In its response, the Government underscores that

> Ms. Pratt is a Senior Fingerprint Specialist for the US Department of Homeland Security. (**ECF No. 112-4** at 1). She has a Master's Degree in Forensic Science and a Bachelor's Degree in Biology. (Id.). She has been working in law enforcement agencies analyzing latent fingerprint evidence for over 20 years. (Id. at 1-3). She has participated in a plethora of specialized trainings, given numerous presentations regarding latent fingerprint analysis, has a journal publication regarding fingerprints, and has given expert testimony in numerous federal and state courts. (Id. at 3-8). Likewise Ms. Cornell, a Senior Forensic Latent Print Analyst with the US Postal Service Forensic Laboratory, has been working with

---

[1] (Noting that "errors in fingerprint matching by expert examiners appear to be very rare. Of the first 194 prisoners in the United States exonerated by DNA evidence, none had been convicted on the basis of erroneous fingerprint matches, whereas 75 percent had been convicted on the basis of mistaken eyewitness identification. Greg Hampikian *et al.*, "The Genetics of Innocence: Analysis of 194 U.S. DNA Exonerations," 12 *Annual Rev. of Genomics and Human Genetics* 97, 106 (2011)). Id at 748.

> latent fingerprint analysis for nearly 25 years, holds an Associate's Degree in Criminal Justice, and has taken several specialized courses and trainings concerning fingerprint analysis. (ECF No. 112-3 at 1-3). She has testified as expert in latent fingerprints 20 times in federal and states courts and is a Certified Latent Print Examiner by the International Association of Identification. (Id. at 3).

**ECF No. 152** at 5-6.

Defendant's generic claims at **ECF No. 135** dissipate in the face of the overwhelming caselaw standing for the proposition that fingerprint evidence is reliable enough for jury trials as a helpful form of identification testimony. More specifically, as discussed before, the First Circuit in *Pena*, 586 F.3d at 110, has already held that there is no need to conduct a *Daubert* hearing before admitting latent fingerprint identification testimony based on the "ACE-V" method, which is the methodology employed by the government's experts in this case. *See* **ECF No. 152** at 4.

In light of the above, and considering that defendant will have ample opportunity to conduct vigorous cross-examination of the government's expert witnesses and present contrary evidence, defendant is not without means of attacking the evidence he now claims to be based on methods that run afoul the profession's parameters and accepted methods.

### IV.   Daubert Hearing

At the pretrial conference held on October 15th, 2020, defendant insisted in the need for an evidentiary hearing provided that he needed the assistance of his forensic expert to substantiate his claim. Out of an abundance of caution and in order to provide the defendant with an opportunity to meet its evidentiary burden, the parties were instructed to confer and

report on whether such hearing, if necessary was to be conducted prior to, or during trial. The government reported it was to present two witnesses and preferred for such hearing to be conducted prior to beginning trial, now set for November 30, 2020. The defendant submitted an Amended Expert's Curriculum Vitae on November 2, 2020. **ECF No. 156**. A *Daubert* hearing was held on November 13, 2020. **ECF No. 161**.

Defendant was present and was assisted by Attorney Miguel Rodríguez-Robles and a Court Interpreter. Also present for the defense was defendant's expert Rubén Díaz-De León ("Mr. Díaz-De León"). During its opening remarks, the government renewed its argument standing for the proposition that a *Daubert* hearing was unnecessary. However, the government indicated being ready to proceed and announced the presence of two of its expert's, namely Patricia L. Cornell and Glenn M. Langenburg.

Mr. Díaz-De León testified on behalf of defendant. He testified having over forty years of experience as a fingerprint specialist and investigator. He extensively testified about information within his Curriculum Vitae and indicated having multiple certificates and courses on the subject, both as keynote speaker and as attendee. During the direct examination, Mr. Díaz-De León testified as to multiple aspects of the process of gathering, lifting and analyzing fingerprints. He described that generally, a fingerprint is left in one of three forms: a) visible, b) semi-visible or c) invisible or molded, which is a latent fingerprint. He also provided extensive testimony as to the chemical processes related to the analysis of a fingerprint and the development of a latent print, whether by use of powder (dust), gas or chemicals. However, to

the Court's surprise, during direct examination the defense did not ask Mr. Díaz-De León any questions related to the findings or contents of the PCAST and NAS reports, upon which defendant's motion *In Limine* relies. Neither did defendant's counsel ask specific questions about the ACE-V method, the reliability of which defendant challenges in his *In Limine*. Rather, Mr. Díaz-De León's testimony revolved around his opinion on the procedure carried out by the prosecution's experts in this case. He indicated having examined photographs and physical evidence during the evidence inspection at the office of the Postal Inspector in Puerto Rico on September 11, 2020. In essence, Mr. Díaz-De León questions the government's failure to memorialize or "perpetuate", with photographs; the exact place or location where the fingerprints where lifted from. Based on his testimony, while lifting fingerprints using reactive agents, one has to perpetuate that image, while protecting the evidence, by taking a series of photographic images. He testified, he utilizes the technique of "forensic photographs," which entails the taking of photographs at "a general, an intermediate and close-up views." While acknowledging that during the evidence inspection and from discovery provided he had seen and examined "close-up" photos, he had not seen any photographs from a general view (indicating the place where the fingerprint was lifted from) or any intermediate view photograph.

Interestingly, on direct examination Mr. Díaz-De León was asked "whether the latent fingerprint development in this case… (was) performed in a scientifically accepted way." He replied by stating: "the process of the development of the fingerprint with the chemical, yes".

In spite of this, Mr. Díaz- De León expressed qualms with the evidence management within the context of the criminal investigation, inasmuch as the pictures he had seen did not perpetuate, the location or general item from where the fingerprint was lifted.

During cross-examination, Mr. Díaz-De León was specifically questioned on and explained that "ACE-V" stands for Analyze, Compare, Evaluate, and Verify. Contrary to the arguments raised by defendant in his motion *In Limine*, Mr. Díaz-De León testified that the ACE-V method is a well-know and reliable method. In cross-examination, he also admitted that under the ACE-V method there is no need or requirement to take any given set of photographs, at least, the general or intermediate photographs he had alluded to on direct examination. More so, Mr. Díaz-De León admitted to the prosecutors questions, that he had been able to conduct an analysis of the latent fingerprints how was provided with and that while so doing, he had resorted to the ACE-V method (except for the verification part).

It appears from the testimony presented, that Mr. Díaz-De León is confusing the reliability of the criminal investigation process, through which the government must establish where it obtained the evidence from, so for it to be relevant; with the reliability of the scientific methodology used in "developing and preserving" evidence, in this case; the fingerprints.

After considering all the evidence, pleadings and testimony heard on the November 13, 2020 *Daubert* hearing, the Court finds that defendant has failed to provide any evidence or testimony in support of his theory which challenges the reliability of the fingerprint evidence as a helpful form of identification testimony during trial. Moreover, defendant's argument in his

motion *In Limine* were brought to the ground and openly denied by his own expert witness. Thus, the Court finds defendant's *In Limine* at **ECF No. 135** completely baseless.

Accordingly, the Court finds that the prosecution's expert's methodology (i.e. ACE-V method and analysis) has "a reliable basis in the knowledge and experience of [the expert's] discipline." D*aubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, at 592 (1993), see also *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998). As numerous courts have found, this Court, too finds that "expert testimony on fingerprint identification based on the ACE-V method is sufficiently reliable under *Daubert*." *U.S. v. Pena*, 586 F.3d at 110–11.

## V.  Conclusion.

In light of all the above, the *In Limine* motion at **ECF No. 135** is hereby **DENIED**.

**SO ORDERED**.

At San Juan, Puerto Rico, on this 20th day of November, 2020.

> **S/AIDA M. DELGADO-COLÓN**
> **United States District Judge**